**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| PATRICK HEALY and | * |
| ELLEN C. HEALY | * |
| Plaintiffs, | * |
| v. | *    **Case No.: PWG-15-3688** |
| BWW LAW GROUP, LLC and | * |
| SUNTRUST MORTGAGE, INC., | * |
| Defendants. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

On four separate occasions over the past decade, Plaintiffs Patrick and Ellen Healy ("the Healys") fell behind on mortgage payments for their property at 7552 Pepperell Drive, Bethesda, Maryland ("the Property"). Each time, the Healys' lender, Defendant SunTrust Mortgage, Inc. ("SunTrust") initiated foreclosure proceedings, which the Healys halted by making payments to bring their loan current.  The Healys filed suit against SunTrust and its law firm, Defendant BWW Law Group, LLC ("BWW") alleging violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law §§ 13-101 to -501; Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann. Com. Law §§ 14-201 to -204; and the Federal Racketeer Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.   ECF No. 1. Specifically, the Healys claim they are entitled to damages because Defendants initiated two of the four foreclosure proceedings by filing robo-signed documents (i.e. foreclosure documents signed without personal knowledge of the contents) and because BWW misquoted the amount

necessary for the Healys to bring their loan current in 2014.   Am. Compl., ECF No. 18. Defendants have moved to dismiss, ECF Nos. 19, 20, and the parties have fully briefed the motions, BWW Mem., ECF No. 19-1; SunTrust Mem., ECF No. 20; Pls.' Opp'n, ECF No. 23; BWW Reply, ECF No. 25; SunTrust Reply, ECF No. 26. No hearing is necessary. Loc. R. 105.6 (D. Md.).   Fourth Circuit authority bars recovery under the MCPA and MCDCA for robo-signature-initiated foreclosure proceedings on valid, collectible debt, and the Healys' Amended Complaint fails to state a RICO claim, but they have stated a MCPA claim related to the 2014 overcharge.   Accordingly, I will grant BWW's Motion to Dismiss, and I will grant SunTrust's Motion in part and deny it in part.

## Background

In December 2006, the Healys obtained an $842,000 promissory note from SunTrust secured by a Deed of Trust on their Property.   Am. Compl. ¶ 7.   In 2008, the Healys began falling behind on their mortgage payments.   *Id.* ¶ 9.   That year, SunTrust's counsel, BWW, initiated a foreclosure suit against the Healys, which SunTrust dismissed in May 2009 after the Healys remitted $66,000 to bring the loan current.   *Id.* ¶¶ 10–12.   Shortly thereafter, the Healys became delinquent on their loan again, and BWW filed a second foreclosure suit against the borrowers on SunTrust's behalf in December 2009.   *Id.* ¶ 14.   The Healys once again remitted a payment to bring the loan current, prompting SunTrust to dismiss the case.   *Id.* ¶¶ 35–36.   The cost of bringing the loan current a second time caused the Healys to file for bankruptcy in the U.S. Bankruptcy Court for the District of Maryland during the pendency of the foreclosure suit. *Id.* ¶¶ 15, 37–38.

In 2012, the Maryland Attorney Grievance Commission suspended BWW attorney Jacob Geesing for instructing non-attorneys to sign his name to foreclosure documents and notaries to

notarize them, conduct known colloquially as robo-signing. *Id.* ¶¶ 16–20. The Maryland Secretary of State also removed BWW notaries for following Geesing's directives. *Id.* ¶ 21. On December 30, 2012, the Healys applied to and participated in the federal government's Independent Foreclosure Review program, *id.* ¶ 27, which among other things, "sought relief for victims of robo-signing" and culminated in a commitment from lenders under investigation, including SunTrust, to discontinue robo-signing practices and to compensate injured borrowers," *id.* ¶ 29. Based on their participation in the program, the Healys received a small payment from SunTrust. *Id.* at 32.

By December 2013, the Healys again fell behind on mortgage payments, prompting BWW to file a third foreclosure suit on SunTrust's behalf in the following year. *Id.* ¶¶ 41–42. This time, the Healys questioned the validity of signatures on the 2014 foreclosure filings and retained a handwriting expert, who allegedly concluded that both the second and third foreclosure filings contained signature discrepancies. *Id.* ¶¶ 43–45. Notwithstanding their concerns, the Healys inquired how much they would need to pay in order to bring the loan current again. *Id.* ¶ 49. BWW initially quoted an amount of $246,733.25, but when the Healys attempted to pay SunTrust, BWW in informed the borrowers that the actual payoff amount was $248,833.25. *Id.* ¶¶ 50–52. After the Healys paid the requested amount, thereby avoiding the foreclosure sale, BWW informed them that its revised estimate had in fact been too high and that SunTrust owed them a refund of an unspecified amount, which they allegedly never received. *Id.* ¶¶ 53–55.

In 2015, after the Healys again fell behind in their mortgage payments, a different law firm initiated a fourth foreclosure suit on SunTrust's behalf against the Healys, which the lender dismissed after the borrowers brought the mortgage current once again. *Id.* ¶¶ 63–64, 67–68;

Ltr. from Brock & Scott, PLLC to Residents at 7552 Pepperell Drive, Bethesda, MD 20817, Am.

Compl. Ex. 19, ECF No. 18-19.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it

fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237,

2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

*Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from

*Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity

the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations [of

fraud] typically "include the 'time, place and contents of the false representation, as well as the

identity of the person making the misrepresentation and what [was] obtained thereby.' "

*Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan.

22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)). All of the Healys' claims are rooted in fraud allegations, so heightened pleading standards apply. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 & n.10 (D. Md. 2009) (applying Fed. R. Civ. P. 9(b) to MCPA claim); *Murray v. Bierman, Geesing, Ward & Wood, LLC*, No. RWT-11-1623, 2012 WL 4480679, at *4 (D. Md. Sept. 27, 2012) (noting applicability of Fed. R. Civ. P. 9(b) to MCDCA claim); *Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mar. 29, 2016) (applying Fed. R. Civ. P. 9(b) to RICO claim based on mail or wire fraud).

<u>**Discussion**</u>

<u>MCPA and MCDCA Claims</u>

1. *Statute of Limitations*

As an initial matter, SunTrust and BWW argue that the Healys' MCDCA and MCPA claims (Counts I and II) relating to the 2009 foreclosure suit are time-barred. SunTrust Mem. 6–8; BWW Mem. 9–10. "Claims under the MCPA and MCDCA are subject to a three-year statute of limitations." *Ayres v. Ocwen Loan Servicing LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015) (citing Md. Code Ann. Cts. & Jud. Proc. 5-101). And claims under each statute accrue "when the claimant in fact knew or reasonably should have known of the wrong." *Id.* (quoting *Walton v. Wells Fargo Bank, N.A.*, No. AW13-428, 2013 WL 3177888, at *6 (D. Md. June 21, 3013)). As the Healys filed their Complaint on December 1, 2015, any facts that they knew or reasonably should have known prior to December 1, 2012 cannot form the foundation of their allegations. The Healys claim they did not know about the alleged robo-signing until 2014, when their retained handwriting expert noted signature discrepancies in the filings for the second and third foreclosure suits. Pls.' Opp'n 9. Plainly, this cannot be. As both Defendants observe,

BWW Reply 2; SunTrust Reply 2, the Plaintiffs' contention is belied by their 2012 participation in the federal government's Independent Foreclosure Review program, which specifically addressed robo-signing issues in the mortgage industry, Am. Compl. ¶¶ 25–32.

But the Healys did not apply to participate in the program until December 30, 2012.  *Id.* ¶ 27.  While it is reasonable to assume that the Healys knew sometime before they applied to participate in the program that the foreclosures documents might have contained robo-signatures, it is not clear when they did know or should have.  BWW argues that they should have known when the program began in August 2012.  BWW Mem. 10.  But at the motion-to-dismiss stage, it would be improper to infer from the fact that a federal program to address robo-signing existed that the Healys knew or should have known that robo-signing might have been used to initiate foreclosure proceedings against them.  BWW and SunTrust similarly argue that the Healys knew or should have known about the alleged robo-signing when the Baltimore Sun reported on the investigation of BWW attorney Jacob Geesing in an October 2010 article that the Healys cited in their Complaint.  BWW Mem. 10; SunTrust Mem. 7–8; Am. Compl. ¶ 6.  It would also be improper to infer from a news article about a single attorney at the law firm retained by SunTrust that the Healys had constructive knowledge of robo-signatures on their foreclosure documents. Without making factual inferences, the earliest date I can conclude that the Healys had actual or constructive knowledge of BWW's use of robo-signatures is December, 30, 2012, just barely within the statute of limitations.  I cannot determine, based on the Amended Complaint, that the Healys' MCPA and MCDCA claims relating to the 2009 foreclosure suit are time-barred.

2.  *MCPA Claim*

To counteract "deceptive practices in connection with . . . the extension of credit," the MCPA provides a cause of action for financial consumers to obtain money damages for injuries

caused by "unfair or deceptive trade practices . . . in . . . the collection of consumer debts." Md. Code Ann. Com. Law §§ 13-102, -303, -408. The statutory definition of "unfair or deceptive trade practices" covers a wide range of conduct in multiple industries. *See id.* § 13-301. Among other forbidden conduct, the term encompasses any "[f]alse . . . or misleading oral or written statements, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301(1). No scienter requirement applies to this category of deceptive trade practices. *Myles v. Rent-a-Center, Inc.*, No. JKB-14-300, 2016 WL 3917212, at *8 n.9 (D. Md. July 19, 2016), meaning defendants can violate the statute without knowing the falsity of their representations. *Id.* To establish a MCPA claim, plaintiffs must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257 (Md. 2007)).

The Healys allege two deceptive trade practices committed by SunTrust: (1) the use of robo-signatures to initiate foreclosure suits in 2009 and 2014; and (2) an overcharge in 2014 when the Healys sought to bring their loan current. Am. Compl. ¶¶ 88–89, 91.[1] They contend that the robo-signatures "accelerated the foreclosure process[,] necessitating [the Healys'] bankruptcy filing," *id.* ¶ 38, which they appear to blame for their inability to obtain a loan modification, *see* ¶ 90 (alleging that accelerated foreclosures forced them to "accept[] a loan at higher than market rate"). The Healys also contend that the overcharge in 2014 harmed them by

---

[1] The Healys amended their initial Complaint to remove allegations that BWW violated the MCPA, *compare* Compl. ¶¶ 104–11, *with* Am. Compl. ¶¶ 87–93, but the heading for the MCPA count still parenthetically names BWW, Am. Compl. 14. As BWW correctly notes, BWW Mem. 23–24, the MCPA exempts attorneys from liability under the statute, Md. Code Ann. Com. Law § 13-104(1). Accordingly, the Healys cannot state a MCPA claim against BWW if it is still their intention to allege MCPA violations against the firm. To the extent that the Healys do allege MCPA violations against BWW, their claims are dismissed with prejudice.

forcing them to pay more than necessary to prevent a foreclosure sale.  *Id.* ¶ 92.  Although the first allegation fails to state a MCPA claim, the second does.

As to the robo-signatures, the Healys unsatisfactorily explain how they detrimentally relied on them.  As SunTrust correctly notes, SunTrust Mem. 11–12, this Court has concluded as a matter of law that robo-signatures on otherwise valid foreclosure documents cannot be a source of detrimental reliance.  In *Stewart v. Bierman*, 859 F. Supp. 2d 754, Judge Roger Titus held that borrowers did not adequately plead the reliance element of an MCPA claim where a complaint "fail[ed] to indicate how . . . alleged forgeries of . . . foreclosure documents materially impacted the debtors' conduct" because "[t]he actual process and method of affixing signatures to court documents is immaterial to a debtor where the existence of the debt and a default are not disputed," *id.* at 769.  As in *Stewart*, the Healys do not dispute that they defaulted on valid debt.  *See* Am. Compl. ¶ 9 ("In 2008, due to issues in the securities market, [the] Healy[s] fell behind [in their] mortgage payments."); *id.* ¶ 40 ("In 2013, [the] Healy[s] again became delinquent in payments to Suntrust.").  Accordingly, they cannot argue that they detrimentally relied on the robo-signatures, which did not alter the validity of the underlying debt.  *See Stewart*, 859 F. Supp. 2d at 769.  The Healys' MCPA claim (Count II) as it pertains to the alleged robo-signatures will be dismissed with prejudice.[2]

With respect to the 2014 overcharge, the Healys also allege that an unspecified BWW employee, acting as SunTrust's agent, falsely stated the amount required to prevent the

---

[2] At a January 5, 2016 status conference, I afforded the Healys the opportunity to amend their complaint to address the deficiencies outlined by SunTrust and BWW in their letters setting forth the factual and legal bases for their proposed motions to dismiss, but cautioned them that failure to address the deficiencies in their amended complaint would result in dismissal with prejudice. *See* ECF No. 15.  SunTrust raised this argument in its letter requesting permission to file a motion to dismiss. SunTrust Ltr. 4 ("The Healys do not establish any reasonable or detrimental reliance on the alleged misrepresentations.").  Accordingly, the claim is dismissed with prejudice.

impending foreclosure sale.  *Id.* ¶¶ 52, 54.  In reliance on that false representation, the Healys paid more than was necessary.  Am. Compl. ¶ 53.  The Healys also allege that an unidentified BBW employee falsely stated that they would receive a refund for the excess payment.  *Id.* ¶¶ 54–55.  SunTrust argues that these allegations fail to state an injury because "had Plaintiffs' [sic] paid an extra $2,100 as the Amended Complaint alleges, the overpayment would have reduced the overall loan obligation to the Plaintiff's benefit."  SunTrust Mem. 14.  But the Amended Complaint provides no indication that the excess amount was in fact applied to the borrowers' principal but rather alleges that BWW promised the Healys a refund that they never received. Am. Compl. ¶¶ 54–55.  I cannot accept SunTrust's invitation to speculate as to how the bank spent any excess funds received from the Healys.

SunTrust also argues that the Healys' failure to identify the individual who notified them that the reinstatement figure was false runs afoul of Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  SunTrust Mem. 13.  But the allegedly false communication was an email providing the $248,833.25 reinstatement figure.  And although the Amended Complaint fails to identify the individual responsible for the false statements, emails attached to the Amended Complaint identify BWW Attorney Chris Haresign as the source of the inaccurate reinstatement figure.  Email from Christ Haresign, BWW Law Group, LLC, to Shawn Whittaker (Oct. 28, 2014, 6:31 P.M.), Am. Compl. Ex. 17.  Although the Court ordinarily "may not consider any documents that are outside of the complaint" in reviewing a motion to dismiss," it may do so where the documents are "incorporated" into the complaint.  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  The Plaintiffs specifically reference Haresign's email in the Amended Complaint.  Am. Compl. ¶ 52.  The Healys have therefore pleaded with sufficient specificity the identity of the individual who allegedly communicated

false information on which they relied when they paid more than necessary to reinstate their loan. Accordingly, the have stated a MCPA claim against SunTrust regarding the 2014 overcharge.

   *3.  MCDCA Claim*

   The Healys allege that BWW violated the MCDCA by robo-signing foreclosure documents. Am. Compl. ¶¶ 82–85. The MCDCA bars debt collectors from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law. § 14-202(8). "To plead a claim under the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Lewis v. McCabe Weisberg & Conway,* No. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014).

   BWW persuasively argues that Fourth Circuit case law bars this claim. BWW Mem. 10–13. In *Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013), borrowers brought a claim nearly identical to the Healys' against BWW.[3] The plaintiffs in that case argued that BWW "violated the MCDCA when it sought to foreclose on their property knowing that 'the right did not exist'" by initiating foreclosure proceedings using robo-signed documents. *Id.* at 300. Noting that the MCDCA permits recovery only where "the debt collector seeks to collect on debt when he or she knows (or should know) that he or she does not have the right to do so," the Fourth Circuit held that "the MCDCA does not allow for recovery for an error in the process of collecting . . . legitimate and undisputed debt." *Id.* at 304–05. As the plaintiffs "fail[ed] to show any evidence that [BWW] had any reason to doubt the validity of the debt and its right to foreclose upon it"

---

[3] At the time, BWW went by the moniker Bierman, Geesing, Ward & Wood LLC.

the Court concluded that the borrowers' robo-signature allegations "simply [do] not [fall] within the ambit of the MCDCA." *Id.* at 304.

Like the *Lembach* plaintiffs, the Healys do not dispute the validity of debt BWW sought to recover or firm's right to collect it.  The Healys admit that they "executed a Deed of Trust . . . agreeing to pay Suntrust $842,000.00 in periodic payments with the full balance to be paid no later than January 1, 2037," Am. Compl. ¶ 7, and that they "became delinquent on payments" prior to the 2009 and 2014 foreclosure suits, *id.* ¶¶ 13, 40.  The Healys attempt to distinguish their claim from *Lembach* by arguing that the plaintiffs in that case "conceded that the right to foreclose on their properties existed, and only challenged the legitimacy of the filings which used robo-signatures."  Pls.' Opp'n 12.  By contrast, the Healys maintain that they do not "concede that BWW could initiate the foreclosure proceedings through the use of improper robo-signed documents."  *Id.*  But, as BWW notes, the Healys' characterization of *Lembach* is simply false. BWW Reply 4–5.  The *Lembach* plaintiffs claimed BWW "violated the MCDCA when it sought to foreclose on their property knowing that 'that right did not exist,' " and they asserted that BWW lacked the right to foreclose because it filed "court documents with false signatures."  528 F. App'x at 300.

The Healys also cite *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2016) and *Bradshaw v. Hilco Recoverables, LLC*, 765 F. Supp. 2d 719 (D. Md. 2011) as authority for the proposition that MCDCA claims encompass procedurally defective attempts to collect debt. But, as BWW notes, BWW Reply 5, both of those cases involve efforts by unlicensed debt collection agencies, *Fontell*, 870 F. Supp. 2d at 411 ("Here, liability under the MCDCA . . . is predicated on the unlicensed attempts of the management agent, through its employees . . . to collect Plaintiff's debt . . . ."); *Bradshaw*, 765 F. Supp. 2d at 732 ("Plaintiffs allege that Hilco's

unlicensed filing of lawsuits against the class members violates the MCDCA's prohibition on attempting, or threatening to enforce a right with knowledge that the right does not exist . . . ."). While *some* debt collector possessed the right to collect the valid debt in those cases, the *unlicensed* defendants did not.  By contrast, the Healys, like the *Lembach* plaintiffs, do not dispute that BWW had the right to collect the SunTrust's debt; rather, they dispute BWW's right to collect the debt in the *manner* that they did.

The Healys fail to distinguish their claim from *Lembach*.  Accordingly, their MCDCA claim against BWW (Count I) fails as a matter of law and will be dismissed with prejudice.[4]

## RICO Claim

The Healys also claim that BWW and SunTrust committed RICO violations by "falsifying foreclosure documents," "threatening to sell [their] home if [they] did not pay incorrect amounts," and "attempting to collect unlawful debts," for which they claim treble damages.  Am. Compl. ¶ 95.  "In order for a RICO claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege '(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering.' " *Davis v. Wilmington Fin. Inc.*, No. PJM-09-1505, 2010 WL 1375363, at *3 (D. Md. Mar. 26, 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  The Healys fail to allege either a pattern of racketeering activity or the existence of an enterprise.

*1. Pattern of Racketeering Activity*

The RICO statute defines "racketeering activity" by reference to a long list of predicate criminal offenses.  18 U.S.C. § 1961(1).  To establish a "pattern of racketeering activity" a defendant must commit a predicate offense at least twice within a ten-year period.  *Id.* § 1961(5).

---

[4] BWW raised the same argument in its letter setting forth the legal and factual basis for its motion to dismiss. BWW Ltr. 3, ECF No. 15 ("[T]he Healys do not allege that BWW ever initiated a foreclosure action with the knowledge that the debt did not exist.").

The Healys name no predicate offense in the Amended Complaint. "[F]alsif[ication] of foreclosure documents" and "threat[s] to sell [the] Healy[s'] home if Healy did not pay incorrect amounts to Suntrust and BWW" are not enumerated at 18 U.S.C. § 1961(1) as types of racketeering activity. Am. Compl. ¶ 95. And an "unlawful debt" is "debt . . . incurred or contracted in gambling activity which was in violation of the law," which is plainly not relevant to the Healys' claims. 18 U.S.C. § 1961(6). The Healys now argue that the Amended Complaint sufficiently pleads the "racketeering activity" element by claiming that BWW and SunTrust "engag[ed] in mail fraud, criminalized in 18 U.S.C. § 1341, and included in RICO's definition of 'racketeering activity' contained in 18 U.S.C. § 1961." Pls.' Mem. 19. But the words "mail fraud" appear nowhere in the Amended Complaint. And "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Nicholson v. Fitzgerald Auto Mall*, No. RDB−13−3711, 2014 WL 2124654, at *4 (D. Md. May 20, 2014) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007)).

The Healys also argue that they lacked notice that the Defendants would seek dismissal on the grounds that they failed to plead an offense that constituted "racketeering activity" and seek permission to further amend their complaint. Pls.' Mem. 18–19. In its letter setting forth the basis for its Motion, BWW averred that "[n]owhere in the Healy's [sic] pleading do they allege . . . 'a pattern of racketeering activity.' " BWW Ltr. 3. SunTrust indicated in its letter that "the Healys entirely fail to allege any facts tending to show a pattern of racketeering activity." SunTrust Ltr. 4. The Healys cannot seriously claim that the Defendants' conflation of the "racketeering activity" and "pattern" elements of the RICO claim failed to apprise them of their Complaint's deficiencies. For one thing, as a pure matter of arithmetic, one act of "racketeering activity" is a prerequisite for a pattern of it. For another, it is not atypical for courts to

characterize a "pattern of racketeering activity" as a single element of a RICO claim rather than two separate ones. *See Salinas v. United States*, 552 U.S. 52, 62 (1997) ("The elements predominant in a [RICO] violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."); *United States v. Mouzone*, 687 F.3d 207, 217 (4th Cir. 2012); *United States v. Wilcock*, No. WDQ-08-86, 2010 WL 2640107, at *3 n.6 (D. Md. June 28, 2010).  The Plaintiffs had sufficient notice of their Complaint's shortcomings.  Because they have failed to allege any "racketeering activity" in their Amended Complaint, let alone a pattern of it, their RICO claim (Count III) will be dismissed with prejudice.[5]

   *2. Enterprise*

   The Healys also fail to plead the "enterprise" element of their RICO claim, which requires "(1) an ongoing organization; (2) associates functioning as a continuing unit (even if some leave as long as the organization remains the same); and (3) the enterprise is an entity separate and apart from the pattern of activity in which it engages." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 477–78 (4th Cir. 2009) (citing *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985).  The Healys allege that the "multiple enforcement actions and suits against BWW and Suntrust for their improper use of robo-signatures and other wrongful practices in foreclosure proceedings" establish the existence of an enterprise.  Am. Compl. ¶ 97.  This conclusory statement alleges none of the three elements required to prove a RICO enterprise.  The Plaintiffs attempt to rectify their failure to address the elements of a RICO enterprise in their Opposition.  Pls.' Opp'n 22 (arguing BWW and SunTrust "functioned as a

---

[5] *See Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 625 (D. Md. 2014) (refusing to grant Plaintiff's request for leave to file a second amended complaint after his first amended complaint failed to address deficiencies highlighted by a motion to dismiss because "it would be unfair to allow the Plaintiff to again correct his pleading deficiencies only after the Defendants have expended more time, energy, and money in pointing them out for him").

'continuing unit' for at least five years, wherein SunTrust would refer mortgages to BWW and BWW would use false documents to initiate foreclosure proceedings" and that the alleged "enterprise is distinct from the otherwise lawful activities of SunTrust, a lender, and BWW, a law firm"). As with the "racketeering" element of the claim, the Plaintiffs cannot further amend their Complaint via Opposition. *Nicholson*, 2014 WL 2124654, at *4. Thus, the Healys' failure to plead the "enterprise" element of its RICO claim is a second, independent basis for dismissal.

Respondeat Superior

In Count IV of their Amended Complaint, the Healys claim that SunTrust is liable "for all of the false, misleading and deceptive actions of BWW committed within BWW's scope of employment as Suntrust's agent." Am. Compl. ¶ 107. As the Healys have not successfully stated any claim against BWW, Count IV is dismissed with prejudice.

**Conclusion**

In sum, BWW's Motion to Dismiss is GRANTED, while SunTrust's is GRANTED IN PART AND DENIED IN PART. The Healys' MCPA claim against SunTrust pertaining to the 2014 overcharge (Count II), can proceed, but not as to the robo-signed foreclosure documents. Their MCDCA claim pertaining BWW's use of robo-signatures (Counts I) is likewise not cognizable. Additionally, the Healys fail to state a RICO claim (Count III). And because none of the Healys' claims against BWW can proceed, SunTrust cannot be held liable for any wrongdoing on BWW's part on a theory of *respondeat superior* (Count IV). All claims besides the MCPA claim addressing the 2014 overcharge will be dismissed with prejudice, as Plaintiffs' inability to cure deficiencies of which they were notified indicates that further attempts to amend would be futile.

A separate Order follows.

15

Date: <u>January 23, 2017</u>                                         <u>         /S/                    </u>
                                                                          Paul W. Grimm
                                                                          United States District Judge

jlb